**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**FRANKFORT DIVISION**

**IN RE**

**BRENDA F. PARKER** **CASE NO. 16-30313**

**DEBTOR**

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Creditor Kentucky Housing Corporation's Objection to Confirmation [ECF No. 20] of the Debtor's proposed Chapter 13 Plan [ECF No. 12]. For the reasons stated more fully below, the Creditor's Objection to Confirmation is sustained and the Debtor shall have 14 days to file an amended plan in conformity with this Order.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY.

The Debtor filed for chapter 13 relief on August 1, 2016. The Debtor's principal residence is located at 210 Swigert Avenue, Frankfort, Kentucky (the "Property"). [Schedule A, ECF No. 11.] The Property is valued at $55,000.00 [*id.*] and is subject to a mortgage lien held by Kentucky Housing Corporation ("KHC") that secures a debt of $41,750.00. [Schedule D, ECF No. 11.] The Debtor proposes to pay KHC the entire debt in equal monthly installments over the five year term of her plan. [Chapter 13 Plan, ECF No. 12.]

Prior to the Debtor's bankruptcy filing, KHC obtained a Judgment and Order of Sale of the Property in the Franklin Circuit Court. [Judgment and Order of Sale, Exhibit E, ECF No. 41-5.] The Property was subsequently sold at a foreclosure sale with KHC as the successful bidder. [KHC Objection to Confirmation, ECF No. 20 at ¶¶ 2-3; Master Commissioner's Report of Sale,

Exhibit F, ECF No. 41-6.] The auction price was $51,500.00, which equaled the total amount due to KHC, including attorney fees and costs of sale.[1] [*Id.*] The sale is not yet confirmed by the state court, a requirement under Kentucky law before the sale is final. Regardless, KHC argues the foreclosure sale prevents the Debtor from making a proposal to cure the debt through her plan and therefore her plan violates 11 U.S.C. § 1325(a)(1), § 1325(a)(3), and § 1325(a)(7). [KHC Objection to Confirmation, ECF No. 20 at ¶¶ 6-10.]

A hearing was held on November 10, 2016, and the parties were allowed additional time to brief the issues. [*See* ECF Nos. 41 and 42.] The Court heard further arguments of counsel on December 22, 2016, and the matter was taken under submission. [ECF No. 46.]

## II. DISCUSSION.

### A. The Cut-Off Date for the Statutory Right to Cure under § 1322(b) is the End of the Auction Sale of the Mortgaged Premises.

Federal bankruptcy law provides a statutory right to cure a default on a debt secured by real property. 11 U.S.C. §§ 1322(b)(2), (3) and (5). Prior to 1994, the statute did not address "the point in the foreclosure process at which a Chapter 13 debtor loses the right to cure a default on a real estate mortgage on his principal residence." *Federal Land Bank of Louisville v. Glenn (In re Glenn*), 760 F.2d 1428, 1429 (6th Cir. 1985). Therefore, in 1985, the Sixth Circuit decided: "The event we choose as the cut-off date of the statutory right to cure defaults is the sale of the mortgaged premises." *Id.* at 1435.

The Sixth Circuit recognized that any solution had objections in theory or practice. *Id.* But this "pragmatic" approach "works the least violence to the competing concerns evident in the

[1] KHC has not filed a proof of claim. KHC's counsel represented at the November 10 hearing that KHC did not intend to file a claim.

language of the statute but also one that is most readily capable of use." *Id.* The Sixth Circuit made it clear that "in so ruling we avoid any effort to analyze the transaction in terms of state property law." *Id.* at 1436.

Other courts struggled with this question to the point that Congress decided to act. In 1994, Congress added § 1322(c) in an attempt to resolve the dispute. Section 1322(c), reads:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and
>
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c).

Unfortunately, this amendment did not resolve the controversy. Courts continued to wrestle with the language of the statute and, in particular, reconcile the statutory language with its legislative history. *See* Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 130.1, at ¶¶ 14-15, Sec. Rev. June 2, 2014, www.Chapter13online.com (explaining "significant inconsistencies" between the language of new § 1322(c)(1) and the legislative history, which the author blames for the "chaos of inconsistent interpretations and outcomes" as a result).

In 2005, the Sixth Circuit once again addressed the termination of the Debtor's statutory right to cure. This time the issue was "whether a default on a residential mortgage may be

'cured' through the filing of a Chapter 13 petition and plan after a foreclosure sale but before the expiration of a state-law redemption period." *Cain v. Wells Fargo Bank, N.A. (In re Cain)*, 423 F.3d 617, 618 (6th Cir. 2005). The Sixth Circuit recognized the continuing conflict with the statutory right to cure and determined that § 1322(c)(1) unambiguously sets the date of the foreclosure sale as the cut-off date:

> The meaning of § 1322(c)(1), which took effect in 1994, is a question on which the courts have "divided into two main schools of thought." *In re Crawford,* 232 B.R. 92, 95 (Bankr. N.D. Ohio 1999).
>
> > "Generally, one line of cases holds that the new statutory language is unambiguous and cuts off the right to cure at the foreclosure auction. The other line of cases finds the language ambiguous, looks to the legislative history for guidance, and concludes that the debtor's right to cure extends beyond the auction date to the point in time where the sale is completed under state law." *Id.* at 95–96.
>
> We agree with the courts that have held § 1322(c)(1) to be unambiguous. In our view, "a foreclosure sale" is a single, discrete event—typically an auction at which the highest bidder purchases the property. *See Crawford,* 232 B.R. at 96; *In re McCarn,* 218 B.R. 154, 160 (BAP 10th Cir.1998). *But see In re Beeman,* 235 B.R. 519, 525 (Bankr.D.N.H.1999) (holding that a foreclosure sale occurs "upon the completion of a process, and not upon the occurrence of a single event such as a foreclosure auction").
>
> Our interpretation is consistent with *In re Glenn,* 760 F.2d 1428 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S. Ct. 144, 88 L.Ed.2d 119 (1985), a pre–1994 case that arose under 11 U.S.C. § 1322(b). (That section of the Code allows Chapter 13 plans to "provide for the curing or waiving [of] any default." 11 U.S.C. § 1322(b)(3); see § 1322(b)(5).) We held in *Glenn* that a Chapter 13 debtor's right to cure a default on a home mortgage terminates on the foreclosure sale of the mortgaged property. *Glenn,* 760 F.2d at 1435. In so holding we expressly rejected "the day the redemption period expires following sale" as "the cut-off date of the statutory right to cure defaults . . . ." *Id. Glenn* is obviously not controlling here, but we consider it instructive nonetheless.

*Id.* at 620.

A debtor's right to cure a home mortgage default under § 1322(c)(1) terminates when the "residence is sold at a foreclosure sale." *Cain* makes it clear that the foreclosure sale occurs "when the gavel comes down on the last bid . . . ." *Id.* at 621 (quoting *In re Crawford*, 232 B.R. 92, 96 (Bankr. N.D. Ohio 1999)). *See also Agee v. Fenton Poured Walls, Inc. (In re Agee)*, 330 B.R. 561 (Bankr. E.D. Mich. 2005) (extending the holding in *Glenn* to a non-residential foreclosure action brought pursuant to Michigan's construction lien statute, which requires state court confirmation before a sale is final).

Section 1322(c)(1) and Sixth Circuit law prevent the Debtor from proposing to cure the default on KHC's secured debt through her plan where the Property was sold at a pre-petition foreclosure sale.

**B. The Debtor's Contrary Arguments are Unpersuasive.**

The Debtor makes several arguments to circumvent the unambiguous language of § 1322(c)(1) and the holdings in *Glenn* and *Cain*. These arguments are not persuasive.[2]

**1. The Debtor May Not Cure Merely Because She Retains Legal Title, Possession, and the Right to Redeem the Property under State Law.**

The Debtor argues that she may protect and exercise her legal title, possession and the right to redeem in her reorganization plan because the state court has not yet confirmed the sale pursuant to Kentucky law. [Debtor's Brief, ECF No. 41 at ¶¶ 15-17.] There is no question the foreclosure process is not complete under Kentucky law because the state court might not enter the sale confirmation order for any number of reasons (e.g., notice problems, auction defects). KY. REV. STAT. ANN. § 426.575 (West 2016) (a foreclosure sale is not final under Kentucky law

[2] One paragraph of the Debtor's response described a section in the Mortgage that allows cure even after foreclosure proceedings commence. [*See* Debtor's Brief, ECF No. 41 at ¶ 3; *see also* Mortgage, ECF No. 41-3 at ¶ 10.] The Debtor did not link this provision to any of her arguments and there are unanswered questions that prevent any conclusion the Mortgage might support the proposed plan (*e.g.*, application after judgment or after a foreclosure sale).

until confirmed by the state court). Even if the sale confirmation order is entered, the foreclosure sale might still fail if the winning bidder does not pay the purchase price or otherwise complete the transaction.

But the issue is whether the Debtor has a federal statutory right to cure, not when a sale is final under state law. Ultimately, it does not matter that lower courts or the Debtor might disagree because the Sixth Circuit opted for a bright line test that avoids the need to "analyze the transaction in terms of state property law." *Glenn*, 760 F.2d at 1436. *Glenn* and *Cain* also make clear that a state law right of redemption has no bearing on whether the Debtor may cure her default pursuant to § 1322(b). *Cain*, 423 F.3d at 620; *Glenn*, 760 F.2d at 1435. Further, the Sixth Circuit determined the language of the statute is unambiguous, negating any need to look to legislative history for a different solution. *Cain*, 423 F.3d at 620.

**2. The Debtor May Not Cure Pursuant to § 1322(b)(3) and § 1322(e).**

The Debtor argues she may cure her default pursuant to § 1322(b)(3) and § 1322(e), notwithstanding § 1322(c)(1). [Debtor's Brief, ECF No. 41 at ¶¶ 18-21.] Section 1322(b)(3) provides, "Subject to subsections (a) and (c) of this section, the plan may . . . (3) provide for the curing or waiving of any default . . . ." Section 1322(e) provides: "Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."

Sections 1322(b)(3) and 1322(c) cross-reference each other; they do not stand alone. Section 1322(b) begins: "Subject to subsections (a) and (c), the plan may - . . . ." So every time § 1322(b)(3) is considered, the Debtor must take into account § 1322(c). Further, § 1322(c)(1) allows cure of a default under "paragraph (3) or (5) of subsection (b) until such residence is sold

at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law . . . ." *See* Section II.A (discussing the impact of the foreclosure sale limit).

Section 1322(e) also does not assist the Debtor's argument. This subsection addresses calculation of the amount necessary to cure a default, not when a debtor may cure a default. The Debtor has produced nothing that would suggest § 1322(c) is not applicable when construing § 1322(e).

**3. The Debtor May Not Modify the Mortgage and Pay the Debt over the Life of the Plan Pursuant to § 1322(c)(2).**

The Debtor argues she can modify the claim to pay the full amount of the debt over the life of the plan pursuant to § 1322(c)(2), despite § 1322(c)(1). [Debtor's Brief, ECF No. 41 at ¶¶ 22-29.] The Debtor argues that acceleration of the debt means "the last payment on the original payment schedule . . . is due before the date on which the final payment under the plan is due" under § 1322(c)(2). As such, the Debtor argues she may exercise and modify her right of redemption to pay the full amount of the claim over the term of the plan pursuant to § 1325(a)(5).

The Debtor's argument is confusing. The redemption argument cannot succeed. As already indicated, the Sixth Circuit left no doubt the right of redemption has no place in the analysis of the right to cure a default through § 1322(b). *See* Section II.A. It is also doubtful the right of redemption even exists, as it appears KHC paid more than the two-thirds required by Kentucky law. [*See* Master Commissioner's Report of Sale, ECF No. 41-6.] *See also* KY. REV. STAT. ANN. § 426.530 (West 2016).

Further, the Debtor's argument improperly relies solely on § 1322(c)(2) and ignores § 1322(c)(1). Subsections (c)(1) and (c)(2) are separated by the conjunctive "and," not the

disjunctive "or." "When encountered in a statute, 'and' is typically construed in its ordinary conjunctive sense." *Rogan v. U.S. Bank, N.A. (In re Partin)*, 517 B.R. 770, 773-774 (Bankr. E.D. Ky. 2014) (citing *OfficeMax Inc. v. U.S.*, 428 F.3d 583, 588–90 (6th Cir.2005) and Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116–25 (West 2012) (explaining the "Conjunctive/Disjunctive Canon")). "Deviation from this rule (*i.e.*, changing 'and' to 'or'), only occurs when required 'to effectuate the obvious intention of the Legislature and to accomplish the purpose or object of the statute.'" *Id*. (citing *Duncan v. Wiseman Baking Co*., 357 S.W.2d 694, 698 (Ky. 1961)).

Nothing in the statute or case law suggests "and" must mean "or" in § 1322(c). Therefore, the Debtor is required to satisfy both subsection (c)(1) and (c)(2).

**C. The Plan is Not Confirmable Pursuant to § 1325(a)(1).**

The proposed plan is not confirmable pursuant to § 1325(a)(1) because it proposes to cure a default in violation of § 1322(c)(1).

KHC also relies on § 1325(a)(3) and § 1325(a)(7) as grounds for its objection. Both sections address the Debtor's good faith, which would require presentation of evidence at a subsequent hearing. This additional step is not required at this time because the plan is not confirmable under § 1325(a)(1).

## III. CONCLUSION.

The Debtor's Plan is not confirmable pursuant to § 1325(a)(1) because it does not comply with § 1322(c). The Property was sold pre-petition at a foreclosure sale so the Debtor many no longer cure defaults. A "foreclosure sale" as used in § 1322(c)(1) refers to the auction conducted in connection with the state court foreclosure process. Therefore, the cut-off date for the statutory right to cure under § 1322(b) occurs at the final bang of the gavel at the auction sale.

The Debtor's creative arguments do not provide sufficient authority to deviate from clear Sixth Circuit precedent.

Based on the foregoing, it is ORDERED the Creditor KHC's Objection to Confirmation [ECF No. 20] is SUSTAINED. The Debtor shall file an amended plan within 14 days of entry of this Order in conformity with the conclusions found herein.



---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**




**Signed By:**
***Gregory R. Schaaf***
**Bankruptcy Judge**
**Dated: Friday, January 06, 2017**
**(grs)**